[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DECLARATORY JUDGMENT
This case came to this court as a Declaratory Judgment action CT Page 15990 brought by Podiatry Insurance
Company of America "PICA" asking for determination by the court as to the rights and duties of PICA to defend and provide coverage for Daniel Drapacz, D.P.M. in the case of Lydia PaulaMosman v. Norwalk Podiatry Associates P.C. et al, Case No CV 93-0131401, Superior Court at Stamford. The defendants were all defaulted except for Lydia Paula Mosman, the plaintiff in the malpractice action.
The insurance policy in question is a claims made policy as distinguished from an occurrence policy. The policy by its terms requires the company to provide coverage and defend claims which are made within the policy period.
PICA asserts that Dr. Drapacz claims made policy expired on July 2, 1992 and that no notice of claim was given to them of the Mosman case by Dr. Drapacz until May 13, 1993 when he made a telephone call to PICA to report that a claim had been made, although, he had not yet been served with papers. It is undisputed that no written notice was given to the company within the policy period as is required by the policy. The issue in the case is whether or not Dr. Drapacz did something under the discovery clause of the policy which would trigger an obligation on the part of PICA to provide a defense and coverage.
Because of the coverage issues, PICA issued a reservation of rights letter to Dr. Drapacz dated May 19, 1993 (Exhibit 6) notifying Dr. Drapacz that the company believed that it did not have an obligation to provide coverage in the Mosman case. The company also advised that because of Dr. Drapacz's claims of having made a phone report to PICA in October 1991, they were providing a defense for him until the issues were resolved. PICA denied any such phone report.
The court listened to the witnesses who testified in the case. Dr. Drapacz testified. Stephen Brown, a Vice President of the Podiatry Insurance Company of America and the plaintiff in the malpractice case Lydia Paula Mosman, were also witnesses.
The court makes the following findings of fact:
1. The Plaintiff, Podiatry Insurance Company of America ("PICA"), is a mutual insurance company with its offices and principal place of business in Brentwood, Tennessee. (Testimony CT Page 15991 of Stephen Brown, see also Exhibit 2.)
2. The defendant, Daniel Drapacz, D.P.M., during the period 1990 through July, 1992, was a doctor of podiatric medicine with offices in Norwalk, Connecticut. (Testimony of Dr. Drapacz.)
3. On or about April 15, 1993, Lydia Paula Mosman, a former patient of Dr. Drapacz, filed suit in Stamford Superior Court alleging medical malpractice against Daniel Drapacz, D.P.M., and others. (Testimony of Dr. Drapacz and See CV 93-0131401 Mosman v. Norwalk et al.)
4. PICA issued to Daniel Drapacz, D.P.M. a policy of insurance bearing policy number 91-2802 with an effective date July 2, 1991 to July 2, 1992, which was a claims-made policy. (Exhibit 2.)
5. Under said insurance policy, in a section entitled "Malpractice Liability", said policy provides that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages as the result of claims first made against the insured during the policy period because of malpractice committed by the insured or any person for whose acts the insured is legally responsible as a member, stockholder or partner of the named insured association, corporation or partnership, subsequent to the retroactive date specified in the schedule and arising out of the professional activities of the insured as a podiatrist. (See Exhibit 2, page 2.)
6. The retroactive date of Dr. Drapacz's insurance coverage was July 2, 1990. (See Exhibit 2, page 1.)
7. On the said insurance policy in the section entitled "INSURING AGREEMENTS" paragraph number 4 states that it is a condition precedent to coverage under this policy that all claims be reported in compliance with the Section Claims 1: Notice of Claim of Suit, (See Exhibit2, page 3.)
8. Under said insurance policy under the section entitled "Claims", said policy states that as a condition precedent to his right to protection afforded by the insurance the insured shall as soon as practicable, give to the company written notice of any claim made against him. In the event suit is brought against the insured, the insured shall immediately forward to the company CT Page 15992 every demand, notice, summons or other process received by him or his representatives. (Exhibit 2, page 7.)
9. Under the insurance policy in section 6 entitled "Discovery Clause" said policy states that if during the policy period or any optional extension period in effect hereunder the insured first becomes aware of malpractice or personal injury to which the policy applies and if the insured shall during the policy period or any optional extension period in effect hereunder give written notice to the company of (a) the specific act, error or omission; and (b) the injury or damage which has or may result from such act, error or omissions; and (c) the circumstances by which the insured first became ware of such act, or omissions; then any claims subsequently made against the insured arising out of such malpractice or personal injury shall be deemed for the purposes of this insurance to have been made during the policy period or any optional extension period in effect hereunder. (Exhibit 2, Page 3.)
10. Lydia Paula Mosman became a patient of Dr. Daniel Drapacz in approximately April. 1991, she had surgery on her feet in May, 1991 and continued as a patient of Dr. Drapacz postoperatively until approximately November, 1991. (Testimony of Dr. Drapacz.)
11. On June 17, 1992, Dr. Drapacz wrote a letter to PICA requesting that his PICA policy be discontinued when it expired in July, 1992, as he had obtained a new policy in Florida with the DEPENDABLE PROTECTION MUTUAL INSURANCE COMPANY. (Testimony of Dr. Drapacz and Exhibit 4.)
12. On July 2, 1992, Dr. Drapacz's PICA policy was canceled. (See Exhibit 5.)
13. Dr. Drapacz elected not to obtain extension coverage (tail coverage) when his policy expired on July 2, 1992. (See testimony of Dr. Drapacz, Stephen Brown and Exhibit A.)
14. On May 15, 1993, Dr. Drapacz telephoned PICA and reported that he had been named in a lawsuit brought by Lydia Mosman and asserted that he had reported in the fall of 1991 that an attorney had requested records from Mrs. Mosman. (Testimony of Dr. Drapacz and Exhibit A.)
15. PICA has no record of the alleged phone call in the fall of 1991 or first part of 1992 involving Mrs. Mosman. (Testimony CT Page 15993 of Stephen Brown and Exhibit 9 Log Book.)
16. Dr. Drapacz admits that he did not provide PICA with written notification of the Mosman claim during the policy period. (See testimony of Dr. Drapacz.)
17. The log book of PICA shows that Dr. Drapacz did report an incident involving a patient named Saraivo in the early part of 1992. (See Paragraph D, 1992 Exhibit 9.)
18. Dr. Drapacz, upon learning of the entry in the PICA logbook, recanted his testimony concerning a report of claim in Mrs. Mosman's case. His final testimony was that he did make a phone call to the company in the late fall 1991 or early 1992 but that the patient that was mentioned was Mrs. Saraivo and not Mrs. Mosman. (See testimony of Dr. Drapacz being excerpted from the transcript of the proceedings of December 9 being pages 6, 7, attached as Appendix A)
19. Dr. Drapacz recanted his earliest testimony in writing concerning a report during the policy period of PICA concerning the patient Mosman. (See testimony of Dr. Drapacz.)
20. A claim concerning Mrs. Mosman was not made by Dr. Drapacz either in writing or orally until May 15, 1993. (See testimony of Dr. Drapacz, Stephen Brown and Exhibit 9.)
21. On May 19, 1993, PICA notified Dr. Drapacz that it was handling the case under a reservation of rights because of lack of notice of the claim within the policy period. (Exhibit 6)
22. PICA had an interest legal or equitable and there is an actual bona fida and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties. (See pleadings.)
23. All persons or entities who had an interest in the subject matter of this complaint were named as parties to this action. All defendants were defaulted except Lydia Paul Mosman who appeared to defend.
24. The records of PICA found no written documentation of any telephone discussion or report of claim involving the claim of Mrs. Mosman from Dr. Drapacz until his telephone report of May 13, 1993. CT Page 15994
25. In as much as Dr. Drapacz did not purchase the optional coverage endorsement at the time of the expiration of his policy, claims-made policy on July 2, 1992, he does not have any coverage for the claim of Mrs. Mosman.
26. Dr. Drapacz was not aware of a claim by Mrs. Mosman against him until a lawsuit was commenced on or after April 15, 1993, and his first report to PICA of the claim was in his telephone conversation on May 13, 1993.
27. That the failure of Dr. Drapacz to comply with paragraphs 4 and 6 of the insuring agreement (Exhibit 2) left him without coverage.
28. As a result of the foregoing findings of facts the court finds the issues in the defendant's four special defenses in favor of the plaintiff.
Judgment may enter in favor of the plaintiff on the complaint and against the defendant on the special defenses.
Accordingly, the Podiatry Insurance Company of America is not obliged to provide coverage or defense for Dr. Drapacz concerning the claims made against Dr. Drapacz in the case of Lydia PaulaMosman v. Norwalk Podiatry Associates, P.C., et al, Case no. CV 93-0131401S, Superior Court at Stamford.
KARAZIN, J.
 Appendix A DANIEL DRAPACZ
recalled by the plaintiff in rebuttal, having been previously sworn, testified as follows:
DIRECT EXAMINATION BY MR. HIRTLE:
Q Having had your memory refreshed by the mention of that patient's name and —
 THE COURT: What is the name of the patient again? The spelling?
CT Page 15995
Q Would you spell that again, Doctor?
A S-a-r-a-i-v-a.
Q As I understand it, Doctor, your memory wasn't refreshed until you heard the name mentioned by Mr. Brown in his testimony from the log this morning, is that correct?
A Yes.
Q And having had your memory refreshed, do you want to change any of your testimony about the first phone conversation with PICA that you made this morning?
A Yes.
Q And what would you like to change, Doctor?
A I would say that the conversation occurred in "92 and I am ninety-nine point ninety-nine percent sure that it was about this patient, Saraiva.
Q And not Mrs. Mosman?
A And not Mrs. Mosman.
Q And to the extent this morning that you testified or to the extent you wrote in letters that it was Ms. Mosman, are you now testifying that you were mistaken?
A Yes.
MR. HIRTLE: No further questions, your honor.
 ************************